IN THE UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                      Case No.:  6:12-bk-05979-KSJ
                                            Chapter 7
WASFI A. MAKAR, M.D., P.A.,

       Debtor.
_____/
RICHARD B. WEBBER, II, Chapter 7 Trustee,

       Plaintiff,

v.                                          Adv. Pro No.

AMERICAN CANCER TREATMENT
CENTERS, INC., a Florida corporation,
AMERICAN CANCER CONSULTANTS, P.A.,
a Florida corporation, and
WASFI A. MAKAR, M.D., an individual,

       Defendants.
_____/

### ADVERSARY PROCEEDING COMPLAINT

       Plaintiff, RICHARD B. WEBBER, II, Chapter 7 Trustee (the "Trustee"), on behalf of Wasfi A. Makar, M.D., P.A., d/b/a American Cancer Treatment Center (the "Debtor"), by and through his undersigned counsel sues defendants, AMERICAN CANCER TREATMENT CENTERS, INC. ("Inc."), a Florida corporation, AMERICAN CANCER CONSULTANTS, P.A., a Florida professional association ("P.A."), and WASFI A. MAKAR, M.D., an individual ("Makar"), all of which are hereinafter collectively referred to as the "Defendants," and alleges as follows:

### A.      PARTIES, JURISDICTION, AND VENUE

      1.      The Debtor is and was at all times material hereto a Florida corporation licensed to do and doing business in the State of Florida.

2.     The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 1, 2012 thereby initiating this bankruptcy case (the "Bankruptcy Case").

3.     On October 9, 2012, an Order was entered converting the Chapter 11 Bankruptcy Case to a Chapter 7 Bankruptcy Case.

4.     The Trustee is the duly appointed and acting Chapter 7 Trustee for the benefit of creditors of the estate.

5.     Inc. is an active Florida corporation doing business in the Middle District of Florida.

6.     P.A. is an active Florida corporation doing business in the Middle District of Florida.

7.     Makar is a sui juris individual who resides in this jurisdiction.

8.     This Court possesses "core" jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b) (2) (1), 28 U.S.C. § 1334, and other applicable law.

9.     Venue properly lies before this Court pursuant to 28 U.S.C. § 1409 and other applicable law, in that this case arises in the context of the Bankruptcy Case, as defined below, and the causes of action at issue herein arose in Orange County, Florida.

10.    This is an action to avoid and recover transfers for damages, costs and attorneys' fees brought pursuant to 11 USC §§§ 105, 544, 550 and 551, 28 U.S.C. § 2201 et seq., and Florida Statutes Chapter 726, Florida's "Uniform Fraudulent Transfer Act" ("UFTA") and Chapter 607, Florida's "Model Business Corporation Act" ("MBCA"), as well as underlying Florida common law.

11.     All conditions precedent to the bringing of this action have occurred, been waived by applicable Defendants, or have been satisfied by the Trustee.

12.     The Trustee, or the estate, has utilized the services of the undersigned special counsel starting October 10, 2012, and intends to utilize the services of special counsel for the duration of this adversary proceeding.

13.     Pursuant to (a) applicable statutes (b) Florida's "Wrongful Act Doctrine" and (c) prevailing party doctrine, the Trustee may be entitled to pursue on behalf of the Debtor a recovery of attorneys' fees and costs associated with the expense of initiating and prosecuting this adversary proceeding.

## B.     GENERAL ALLEGATIONS

### 1.     The Debtor and Makar

14.     The Debtor was formed in 1997 by Makar.

15.     The federal tax identification number ("FEIN") for the Debtor is 59-3127222.

16.     At all relevant times, Makar was the sole shareholder, owner and President of the Debtor.

17.     Makar is a medical doctor and the Debtor was the entity through which he conducted his medical practice.

18.     For the purposes of medical billing, Makar reassigned to the Debtor his benefits to receive payment on account of providing medical services, which allowed the Debtor to receive payment from the insurance companies for medical services rendered by Makar.

19.     At all relevant times, through Makar, the Debtor provided radiation treatments for cancer patients.

20.    The Debtor conducted business under the d/b/a "American Cancer Treatment Center."

21.    The Debtor operated from two offices located at 211 Coral Sands Drive, Rockledge, FL ("Rockledge Location") and 845 Century Medical Drive, Titusville, Florida ("Titusville Location").

22.    The Debtor's mailing address and principal place of business was the Rockledge Location.

## 2.    The Debtor's Insurance Billing Practices

23.    On October 1, 2002, the Debtor executed an Agreement for Medical Billing & Practice Management (the "Agreement") with Comprehensive Medical Management, Inc. ("CMM") for CMM to bill insurance companies on behalf of the Debtor for medical services rendered to patients.

24.    In the Agreement, the Debtor identified itself as "Wasfi A. Makar, M.D. d/b/a American Cancer Treatment Center."

25.    On February 18, 2004, pursuant to the Agreement, the Debtor authorized CMM to apply for the Debtor's enrollment as a Health Care Provider for Medicare.

26.    In the Application for enrollment (the "Application"), the medical provider was identified as "Wasfi A. Makar, M.D., American Cancer Treatment Center" and the Debtor's FEIN was utilized.

27.    Makar executed the Application attesting to having read the contents of the Application and certifying that the information contained therein was true, correct and complete.

28.     In connection with the Application, CMM submitted the Articles of Incorporation of the Debtor along with the Debtor's FEIN, as evidenced by a billing statement from the Internal Revenue Service.

29.     Further, in connection with the Application, Makar applied to reassign his medical billing benefits for payment by Medicare to the Debtor  (the "Reassignment").

30.     In the Reassignment, the medical provider was identified as "Wasfi A. Makar, M.D., American Cancer Treatment Center" and the Debtor's FEIN was utilized.

31.     Makar executed the Reassignment attesting to having read the contents of the Reassignment and certifying that the information contained therein was true, correct and complete.

32.     Then, on August 16, 2006, the Debtor authorized CMM to obtain a National Provider Number ("NPI") for the Debtor, which is a unique 10-digit identification number issued to health care providers by Medicare and Medicaid Services, for billing purposes.

33.     In the Application for a NPI, the organization name was identified as "American Cancer Treatment Center" and the Debtor's FEIN was utilized.

34.     The NPI received by the Debtor from Medicare and Medicaid services was 1639287709.

**4.     Inc.**

35.     Inc. was formed in 1997 by Makar.

36.     The FEIN for Inc. is 59-3446229.

37.     At all times, Makar has been the President of Inc.

38.     The mailing address and principal place of business for Inc. is the Rockledge Location.

39.    In calendar year 2000, Inc. was administratively dissolved for Makar's failure to file an annual report with the Florida Department of State Division of Corporations.

40.    On November 15, 2005, Inc. was reinstated by Makar to be an active Florida corporation.

41.    One year later, in calendar year 2006, Inc. was again administratively dissolved for Makar's failure to file an annual report with the Florida Department of State Division of Corporations.

42.    On March 7, 2012, Inc. was reinstated by Makar to be an active Florida corporation.

43.    Inc. never provided any services to the Debtor or otherwise conducted any business with the Debtor.

44.    In fact, at all material times, Inc. conducted no business, and was a shell corporation without any legitimate business purpose.

**5.    P.A.**

45.    P.A. was formed in 2010 by Makar.

46.    The FEIN for P.A. is 27-3910155.

47.    At all times, Makar has been the President of P.A.

48.    The mailing address and principal place of business for P.A. is the Rockledge Location.

49.    One year after its incorporation, P.A. was administratively dissolved for Makar's failure to file an annual report with the Florida Department of State Division of Corporations.

50.    On March 7, 2012, P.A. was reinstated by Makar to be an active Florida corporation.

51.     P.A. never provided any services to the Debtor or otherwise conducted any business with the Debtor.

52.     In fact, at all relevant times, the P.A. conducted no legitimate business and was a shell corporation without any legitimate business purpose.

**6.      The Dr. Chancellor Litigation**

53.     On or about February 5, 2004, the Debtor and Michael W. Chancellor, M.D. ("Dr. Chancellor") entered into an Employment Agreement.

54.     The Employment Agreement provided for the Debtor to pay compensation, late charges, vacation pay, and reimbursement of certain expenses to Dr. Chancellor.

55.     The Debtor breached the Employment Agreement by failing or refusing to pay these amounts.

56.     On January 25, 2007, Chancellor instituted a lawsuit against the Debtor in the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida with a case captioned *Chancellor v. Wasfi A. Makar, M.D.,P.A.* and with a case number of 05-2007-CA-24852 to recover amounts due for compensation, late charges, vacation pay, and reimbursement of certain expenses (the "Chancellor Litigation").

57.     On July 21, 2009, after a trial, judgment was entered in the amount of $232,244.65 against the Debtor in the Chancellor Litigation for the monetary damage caused by the Debtor's breach of the Employment Agreement.[1]

---

[1] On December 13, 2011, an amended judgment was entered in the amount of $318,563.61 against the Debtor in the Chancellor Litigation, representing the attorneys' fees and costs incurred by Dr. Chancellor in the Chancellor Litigation.

58.     On September 30, 2009, Dr. Chancellor served a writ of garnishment on Wachovia Bank ("Wachovia") directed to any accounts held by the Debtor in an effort to satisfy the judgment.

59.     Wachovia initially froze an account held by the Debtor, but shortly thereafter, mistakenly asserted that the account frozen was not held by the Debtor.

60.     As a result, Dr. Chancellor agreed to relieve Wachovia of the obligation to garnish the account.

61.     On November 13, 2009, Wachovia released control of the Debtor's account.

62.     On that same date, the Debtor issued check number 13596 in the amount of $100,000.00 on the frozen account held at Wachovia and issued the check to Inc., which then was deposited into an account held at RBC Bank ("RBC").

63.     Upon discovering this information, Dr. Chancellor investigated farther into the Debtor's operations and finances.

7.     **The Bank Accounts and the Transfers**

64.     Despite the fact that all practice revenues were earned by the Debtor and billed under the Debtor's NPI and FEIN, since January 1, 2007, and even earlier, through March 2010, virtually all practice revenues were diverted to an account at RBC held by Inc. and Makar with an RBC account number ending in 2879 ("RBC Account 1").

65.     After diverting the Debtor's revenues into RBC Account 1, Makar then transferred a portion of those funds to a second account at RBC held by Makar and Inc. with a RBC account number ending in 7122 ("RBC Account 2"), and then transferred a portion of the funds to an account at Wachovia held by the Debtor with an account number ending in 1580 ("Wachovia Account").

66.    RBC Account 1 and RBC Account 2 have never been funded by anything other than revenues generated by the Debtor, although the owner of the these accounts - Inc. - never provided medical services to anyone, or conducted any business of any kind.

67.    From each of these accounts, Makar further diverted the funds by transferring substantially all, if not all, of the money out of these accounts for his own benefit.

68.    For instance, from January 2007 through January 2008, RBC Account 2 was funded solely by transfers made from RBC Account 1, which was funded solely by insurance payments made to the Debtor on account of its medical services rendered and deposited into RBC Account 1.

69.    In January 2008, by virtue of the transfers, the RBC Account 2 held approximately $1,000,000.

70.    On January 29, 2008, Makar effectuated a $750,000 transfer from RBC Account 2 to invest in his pension at JPMorgan Chase Bank.

71.    Then, on October 15, 2008, Makar effectuated a $400,000 transfer and on November 4, 2008, a $200,000 transfer to invest in his pension at JPMorgan Chase Bank.

72.    This was accomplished at a time when the Debtor owed debts that the Debtor was unable to satisfy.

73.    In fact, in all, between January 1, 2007 and March 5, 2010, Makar withdrew more than $5.6 million dollars of the Debtor's revenues from these accounts for his own personal benefit, as reflected by the Spreadsheets attached hereto as Exhibit "A" and "B" and incorporated by reference herein.

74.    Shortly after Dr. Chancellor learned of the existence of RBC Account 1 and RBC Account 2, in December, 2009, Makar ceased using the Wachovia Account, RBC Account 1 and

RBC Account 2, and opened an account at TD Bank held in the name of Inc. with a TD account number ending in 0720 (the "TD Account").

75.    Similar to Makar's use of RBC Account 1 and RBC Account 2, all funds deposited into the TD Account were generated through the Debtor's medical services billed by CMM utilizing the Debtor's FEIN and NPI.

76.    Additionally, similar to Makar's use of the Wachovia Account, RBC Account 1 and RBC Account 2, Makar withdrew more than $500,000 dollars of the Debtor's revenues from the TD Account for his own personal benefit, as reflect by the Spreadsheet attached hereto as Exhibit "C" and incorporated by reference herein.

77.    All transfers of finds identified herein, and on the attached Exhibits "A" through "C" will be referred to herein as the "Bank Transfers."

**8.    Transfer of Remaining Assets**

78.    In an effort to thwart Dr. Chancellor's legitimate discovery efforts, the Debtor filed the instant Bankruptcy Case under Chapter 11 without any legitimate means to reorganize.

79.    According to the Debtor's representations, as of the date of filing the Chapter 11, the Debtor allegedly ceased conducting business.

80.    However, since the date of the Bankruptcy Case filing, and presently, patients are being treated at the Rockledge Location and Titusville Location.

81.    In fact, since the date of the Bankruptcy Case, and presently, CMM is utilizing the Debtor's FEIN and NPI to bill insurance companies for services performed at the Rockledge Location and Titusville Location.

82.     The office equipment and supplies, as well as the diagnostic medical equipment and attached computers used to treat patients, remain at the Rockledge Location and Titusville Locations and have been utilized to service patients.

83.     According to the Debtor's Schedules and Statement of Financial Affairs, the P.A. is utilizing the Debtor's FEIN and NPI to service patients and receive compensation from the medical insurance companies therefor.

84.     However, according to the Debtor's Motion for Approval of Compensation of Debtor's Insider, Inc. is utilizing the Debtor's FEIN and NPI to service patients and receive compensation from the medical insurance companies therefor.

85.     Neither Inc. nor P.A. paid any consideration to the Debtor for the use of the medical equipment, FEIN, NPI, patient lists or any other assets owned by the Debtor.

86.     The transfer of the Debtor's remaining assets will be collectively referred herein as the "Remaining Transfers."

**9.      Insolvency of the Debtor**

87.     The funds in the Wachovia Account, RBC Account 1, RBC Account 2, the TD Account as well as the medical equipment and corresponding office supplies constitute all of the Debtor's assets.

88.     At no time did the Debtor have any capital because Makar diverted all of the Debtor's funds ultimately for his benefit.

89.     The Bank Transfers and Remaining Transfers were all made at a time when the Debtor owed Dr. Chancellor substantial sums.

90.     The Debtor knew at the time the Debtor breached the Employment Agreement with Dr. Chancellor that the Debtor would be responsible for repaying Dr. Chancellor.

91.    Most, if not all, of the Bank Transfers and Remaining Transfers occurred after the Debtor breached the Employment Agreement.

92.    The Debtor knew or should have known that the Debtor would have substantial liability to Dr. Chancellor in light of the amounts the Debtor and Makar failed and refused to pay.

93.    After the Bank Transfers and Remaining Transfers, the Debtor was unable to pay Dr. Chancellor when the debt became due.

**10.    The Debtor concealed the Transfers**

94.    The Debtor and Makar did everything possible to conceal the Bank Transfers and Remaining Transfers.

95.    First, during discovery in aid of execution in the Chancellor Litigation, the Debtor refused to respond to questions related to its assets, even raising the Fifth Amendment privilege against self-incrimination.

96.    Second, in September, 2009, when the Debtor mistakenly received the garnished funds back from Wachovia, the Debtor immediately transferred those funds to the accounts at RBC and ceased using the Wachovia Account.

97.    Third, when Dr. Chancellor learned of the accounts at RBC, the Debtor quickly withdrew all funds from those accounts and proceeded to open an account at TD and divert all of the Debtor's revenues to the account at TD.

98.    Fourth, on May 1, 2012, when the Debtor instituted its Chapter 11, the Debtor did not identify the accounts at RBC or the account at TD despite the fact that all of the Debtor's funds were diverted to these accounts.

99.    Finally, in the Bankruptcy Case, initially, the Debtor represented that all remaining assets were transferred to either P.A., but then later represented that all remaining assets were transferred to Inc.

## C.    CAUSES OF ACTION

### Count I:  Intentionally Fraudulent Transfer

100.    This is an action against the Defendants to recover the Bank Transfers and Remaining Transfers pursuant to Bankruptcy Code §§ 544, 550 and 551, Florida Statutes §§§ 726.105(1)(a), 726.108(1)(a) and (2),  and 726.109(2) and (3) and other applicable law.

101.    The Trustee realleges and incorporates by reference paragraphs 1 through 99 of this Complaint as though fully set forth herein.

102.    With respect to the Bank Transfers and Remaining Transfers:

    a.    The Bank Transfers and Remaining Transfers were made to an insider because the Defendants are or were at all relevant times insiders of the Debtor.

    b.    The Bank Transfers and Remaining Transfers enabled the Defendants to maintain possession thereafter.

    c.    At times when the Bank Transfers and Remaining Transfers should have been disclosed, they were in fact concealed.

    d.    The Debtor made the Bank Transfers and Remaining Transfers with the actual intent to hinder, delay and defraud its creditors.

    e.    The Bank Transfers and Remaining Transfers constituted transfers of all the Debtor's assets.

     f.     The value of what was received by the Debtor in connection with the Bank Transfers and Remaining Transfers was not reasonably equivalent to the value of the assets.

     g.     The Debtor was insolvent or became insolvent shortly after the Bank Transfers and Remaining Transfers were made.

     h.     The Bank Transfers and Remaining Transfers occurred in connection with or shortly before changes in the status of significant debt of the Debtor.

103.    Based upon the foregoing, the Bank Transfers and Remaining Transfers constituted fraudulent transfers as to the Debtor and unjustly inured to the benefit of the Defendants in that they were made, as a matter of law, with actual intent to hinder, delay, and defraud the Debtor's creditors and others having claims or interests in the Bank Transfers and Remaining Transfers.

WHEREFORE, the Trustee requests relief in his favor and against the Defendants that shall provide for:

     a.     entry of a judgment for avoidance of the Bank Transfers and Remaining Transfers (including all proceeds thereof) to the fullest extent allowable pursuant to Florida Statutes § 726.108(1)(a), and other applicable UFTA law, and permitting the additional relief set forth in Florida Statutes § 726.108(2); or

     b.     entry of a judgment for damages against the Defendants for the full value of the Bank Transfers and Remaining Transfers, based upon their values at the times of the subject transfers, subject to

appropriate adjustment as the equities may require as set forth pursuant to <u>Florida Statutes</u> §§ 726.109(2) and (3), which equities should specifically include the recognition of any appreciation or other income generated from Bank Transfers and Remaining Transfers since the times of the Bank Transfers and Remaining Transfers;

c.    the recovery of all of the Trustee's attorneys' fees, court costs, and related expenses incurred as a result of the Bank Transfers and Remaining Transfers, to the extent recoverable under applicable law; and

d.    such other or additional relief as is necessary and appropriate.

### <u>Count II:  Constructively Fraudulent Transfers</u>

104.    This is an action for avoidance and recovery of Bank Transfers and Remaining Transfers by the Debtor to the Defendants of the Bank Transfers and Remaining Transfers, and all proceeds of the foregoing, pursuant to Bankruptcy Code §§ 544, 550 and 551, <u>Florida Statutes</u> §§§ 726.105(1)(b), 726.108(1)(a) and (2),  and 726.109(2) and (3) and other applicable law.

105.    The Trustee realleges and incorporates by reference paragraphs 1 through 99 of this Complaint as though fully set forth herein.

106.    With respect to the Bank Transfers and Remaining Transfers:

a.    The Debtor made the Bank Transfers and Remaining Transfers to the Defendants.

b.    The Defendants were recipients of the Bank Transfers and Remaining Transfers.

c.    The Defendants were insiders of the Debtor at the time of the Bank Transfers and Remaining Transfers.

d.    The value of the consideration received by the Debtor was not reasonably equivalent to the value of the Bank Transfers and Remaining Transfers.

e.    The Bank Transfers and Remaining Transfers constituted transfers of a substantial portion of the Debtor's assets.

107.    At the time of the transfers, one or both of the following circumstances existed:

a.    the Debtor was engaged or was about to engage in a business and in a transaction for which its remaining assets were unreasonably small in relation to the Bank Transfers and Remaining Transfers; and

b.    the Debtor intended to incur, believed, or reasonably should have believed that it would incur debts beyond its own ability to repay them as they came due.

108.    Based upon the foregoing, the Bank Transfers and Remaining Transfers were fraudulent as to the Debtor and unjustly inured to the benefit of the Defendants in that they were made, as a matter of law, with actual intent to hinder, delay, and defraud the Debtor's creditors and others having claims or interests in the assets.

WHEREFORE, the Trustee requests relief in his favor and against the Defendants that shall provide for:

a.    entry of a judgment for avoidance of the Bank Transfers and Remaining Transfers (including all proceeds thereof) to the fullest extent allowable pursuant to <u>Florida</u> <u>Statutes</u> § 726.108(1)(a), and

other applicable UFTA law, and permitting the additional relief set forth in <u>Florida Statutes</u> § 726.108(2); or

b.    entry of a judgment for damages against the Defendants for the full value of the Bank Transfers and Remaining Transfers, subject to appropriate adjustment as the equities may require as set forth pursuant to <u>Florida Statutes</u> §§ 726.109(2) and (3), which equities should specifically include the recognition of any appreciation or other income generated from Bank Transfers and Remaining Transfers since the times of the Bank Transfers and Remaining Transfers;

c.    the recovery of all of the Trustee's attorneys' fees, court costs, and related expenses incurred as a result of the Bank Transfers and Remaining Transfers, to the extent recoverable under applicable law; and

d.    such other or additional relief as is necessary and appropriate.

### <u>Count III : Constructively Fraudulent Transfers</u>

109.    This is an action for avoidance and recovery of the Bank Transfers and Remaining Transfers by the Debtor to the Defendants of the assets, and all proceeds of the foregoing, pursuant to Bankruptcy Code §§ 544, 550 and 551 <u>Florida Statutes</u> §§§ 726.106(1), 726.108(1)(a) and (2), and 726.109(2) and (3)and other applicable law.

110.    The Trustee realleges and incorporates by reference paragraphs 1 through 99 of this Complaint as though fully set forth herein.

111.    With respect to the transfers of the assets:

a.  The Debtor made the Bank Transfers and Remaining Transfers to the Defendants.

b.  The Defendants were the recipients of the corresponding Bank Transfers and Remaining Transfers.

c.  The Defendants are insiders of the Debtor.

d.  The value of the consideration received by the Debtor was not reasonably equivalent to the Bank Transfers and Remaining Transfers.

e.  The Bank Transfers and Remaining Transfers constituted transfers of a substantial portion of the Debtor's assets.

112.  As alleged above, the Debtor did not receive reasonable and equivalent value in exchange for the Bank Transfers and Remaining Transfers.

WHEREFORE, the Trustee requests relief in its favor and against Defendants that shall provide for:

a.  entry of a judgment for avoidance of the Bank Transfers and Remaining Transfers (including all proceeds thereof) to the fullest extent allowable pursuant to Florida Statutes § 726.108(1)(a), and other applicable UFTA law, and permitting the additional relief set forth in Florida Statutes § 726.108(2); or

b.  entry of a judgment for damages against the Defendants for the full value of the Bank Transfers and Remaining Transfers, based upon their values at the times of the subject Bank Transfers and Remaining Transfers, subject to appropriate adjustment as the

equities may require as set forth pursuant to <u>Florida Statutes</u> §§ 726.109(2) and (3), which equities should specifically include the recognition of any appreciation or other income generated from Bank Transfers and Remaining Transfers since the times of the Bank Transfers and Remaining Transfers;

c.    the recovery of all of the Trustee's attorneys' fees, court costs, and related expenses incurred as a result of the Bank Transfers and Remaining Transfers, to the extent recoverable under applicable law; and

d.    such other or additional relief as is necessary and appropriate in the circumstances.

### <u>Count IV:  Director and Officer Liability</u>

113.    This is an action by the Trustee for damages against Makar for breach of fiduciary duty as a director of the Debtor under the MBCA.

114.    The amount in controversy against Makar exceeds $15,000, exclusive of attorneys' fees, costs and interest.

115.    This action is brought pursuant to <u>Florida Statutes</u> § 607.0831 and <u>Florida Statutes</u> § 607.0841, a portion of the MBCA, and other applicable law.

116.    The Trustee realleges and incorporates herein paragraphs 1 through 99 above, as though fully set forth herein.

117.    At all material times relevant to this action, Makar was the sole officer and director of the Debtor.

118.    At all material times relevant to this action, Makar was always aware that the funds compromising the Bank Transfers and Remaining Transfers at the outset belonged to the Debtor, and never belonged to anyone other than the Debtor, regardless of who might ever allege otherwise.  He knew or should have known he had a significant duty to the Debtor and to its creditors to conserve the Debtor's funds rather than utilize those funds for a personal investment.

119.    Makar has breached his duties as a director of the Debtor.

120.    Makar's business dealings with the Debtor constitute transactions from which Makar derived an improper personal benefit, both directly or indirectly.

121.    Makar's breach of his duties as director of the Debtor further constitutes recklessness or an act or omission which was committed in bad faith, or with malicious purpose, or in a manner exhibiting wanton and willful disregard of the Debtor's rights and rights of creditors of the Debtor.

122.    As a result of the foregoing, the estate of the Debtor and its creditors have suffered substantial damages for which Makar is liable.

123.    The Trustee is entitled to recover reasonable attorneys' fees and costs that it expended pursuant to Florida's Wrongful Act Doctrine and other applicable law, and pursuant to documents referenced above.

WHEREFORE, The Trustee requests judgment for damages against Makar, plus pre-judgment interest, post-judgment interest, court costs, and related expenses recoverable, together with any and all additional relief this Court deems just and proper.

### Count V:  Common Law Breach Of Fiduciary Duty

124.    This is an action by the Trustee for damages against Makar for breach of fiduciary duty to the Debtor under Florida common law.

125.    The Trustee realleges and incorporates by reference paragraphs 1 through 99 as though fully set forth herein.

126.    At all material times herein, Makar served or purported to serve as the authorized and existing fiduciary of the Debtor.  Makar exercised de facto control over the Debtor.

127.    Makar has at all times relevant hereto owed a fiduciary duty to the Debtor under Florida common law.

128.    As alleged above, the Debtor reposed trust and confidence in Makar, or was entitled to do so.

129.    Makar knowingly and willfully accepted the responsibilities entrusted to him by the Debtor.

130.    Makar was always aware that the Assets at the outset belonged to the Debtor, and never belonged to anyone other than the Debtor, regardless of who might ever allege otherwise.

131.    Makar knew or should have known he had a significant duty to the Debtor and to its creditors to conserve the Debtor's funds rather than utilize those funds for a personal investment.

132.    Makar breached his resultant fiduciary duty to the Debtor and its creditors in the manners described above.

133.    In so doing, Makar willfully breached his duty of care and loyalty in order to enrich himself at the expense of the Debtor and its creditors.

134.    As a result of his breach of fiduciary duty, the Debtor has been disproportionately damaged in an amount equaling the value of the assets.

WHEREFORE, the Trustee requests this Court to enter a judgment in his favor, and against Makar for damages, interest, costs, and for such other relief as this Court deems appropriate.

### Count VI:  Common Law Unjust Enrichment

135.    This is an action by the Trustee against the Defendants for unjust enrichment with respect to all of the transfers.

136.    The Trustee realleges and reincorporates the allegations set forth in paragraphs 1 through 99 above as though fully set forth herein.

137.    The Debtor conferred a benefit on the Defendants through the Bank Transfers and Remaining Transfers without consideration.

138.    The Defendants received the benefit of the Bank Transfers and Remaining Transfers with knowledge.

139.    The Defendants voluntarily accepted and retained the benefit of the Bank Transfers and Remaining Transfers.

140.    The Defendants were unjustly enriched, to the extent of the Bank Transfers and Remaining Transfers such that it would be inequitable to allow them to retain that benefit without paying to the Debtor the value of the Bank Transfers and Remaining Transfers.

141.    The Bank Transfers and Remaining Transfers are properly avoidable by the Trustee, for the benefit of the Debtor and the estate.

WHEREFORE, the Trustee respectfully requests this Court to enter a judgment in favor of the Trustee and against the Defendants, jointly and severally, in the full amount of the Bank Transfers and Remaining Transfers, and grant all other appropriate relief.

### Count VII:  Mere Continuation/Successor Liability

142.    This is an action by the Trustee to hold Inc. and P.A. jointly and severally liable for the debts of the Debtor.

143.    The Trustee realleges and reincorporates the allegations set forth in paragraphs 1 through 99 above as though fully set forth herein.

144.    Inc. and P.A. are the mere continuation of the Debtor.

145.    Makar is the sole shareholder and owner of Inc. and P.A.

146.    Makar transferred all assets of the Debtor to Inc. and P.A. when the Debtor ceased operations.

147.    Inc. and P.A. operate from the Rockledge Location and the Titusville Location, and operates the identical business involving the same patients.

148.    At all times relevant hereto, the Debtor, Inc. and P.A. did not have any separate corporate existence in fact.

149.    At all times relevant thereto, the assets and liabilities of the Debtor were commingled with those of Inc. and P.A.

150.    Makar used Inc. and P.A. to defraud the creditors of the Debtor.

151.    Based upon the foregoing, Inc. and P.A. are deemed to be the mere continuation of the Debtor, and as such, Inc. and P.A. are liable for the debts of the Debtor.

**WHEREFORE**, the Trustee respectfully requests this Court to enter a judgment in favor of the Trustee and against Inc. and P.A., jointly and severally, for all debts owed by the Debtor, and grant all other appropriate relief.

## Count VIII:  Alter Ego/Corporate Veil Piercing

152.    This is an action by the Trustee for piercing the corporate veil of the Debtor, which is a sham and an alter-ego of Makar, Inc., P.A. or some combination of the same.

153.    The Trustee realleges and reincorporates the allegations set forth in paragraphs 1 through 99 above as though fully set forth herein.

154.   Inc. and P.A. have no corporate existence or purpose that is legitimate or lawful.

155.   Instead, Inc. and P.A. were formed solely as a mechanism for the Debtor to transfer a significant portion of its assets as a going concern and thus unfairly prejudice the creditors of the Debtor by placing these valuable assets outside of the reach of the creditors at the time of the Debtor's insolvency.

156.   Because Inc. and P.A. were formed and operated for an improper purpose, because the Debtor has no legitimate or separate corporate existence, and because the Debtor was formed as a buffer with the intent to separate its assets from Makar, Inc., P.A., the corporate existence of these business entities should be disregarded.

**WHEREFORE**, the Trustee respectfully requests this Court to enter a judgment in favor of the Trustee and against Makar, Inc. and P.A., jointly and severally, for all debts owed by the Debtor, and grant all other appropriate relief.

### Count IX : Unlawful Distribution of Corporate Assets

157.   This is an action to hold Makar, Inc. and P.A. liable for the debts of the Debtor, to the extent that they unlawfully authorized and/or received distributions of the assets of the Debtor.

158.   The Trustee realleges and reincorporates the allegations set forth in paragraphs 1 through 99 above as though fully set forth herein.

159.   Makar, as the officer, director and shareholder of the Debtor, authorized and caused its assets to be distributed to Makar, Inc. and P.A. the full extent of which is yet to be determined.

160.   Such distributions included, without limitation, shareholder distributions and distributions of the Debtor's personal property, including its account receivables.

161.    Prior to the date such distributions were authorized, Dr. Chancellor was a creditor of the Debtor.

162.    As a result of these distributions, the Debtor became insolvent and unable to satisfy its creditors' claims.

163.    To the extent that Makar, Inc. and P.A. authorized and/or received distributions of the Debtor's assets, the Defendants are deemed to have received such assets in trust for the benefit of the Debtor's creditors.

**WHEREFORE**, the Trustee respectfully requests this Court to enter a judgment in favor of the Trustee and against Makar, Inc. and P.A., jointly and severally, for the debts of the Debtor to the extent that they received and/or unlawfully authorized distributions of the Debtor's assets, plus interest thereon, reasonable attorney's fees and costs, such other relief as the Court deems equitable, just and proper.

### County X : Imposition of Constructive Trust on Transferred Assets

164.    This is a cause of action for imposition of a constructive trust upon the transferred assets.

165.    The Trustee realleges and reincorporates the allegations set forth in paragraphs 1 through 99 above as though fully set forth herein.

166.    To the extent that Defendants, authorized and/or received distributions of the Debtor's assets after Dr. Chancellor became a creditor, Defendants are deemed to have received such assets in trust for the benefit of the Debtor's creditors.

**WHEREFORE**, the Trustee respectfully requests this Court to enter a judgment in favor of the Trustee and against Makar, Inc. and P.A., jointly and severally, imposing a constructive trust

on the transferred assets, in favor of the Trustee on behalf of the Debtor, and that this Court grant such other and further relief as is just and proper.

### Count XI : Injunctive Relief

167.    Bankruptcy Code § 105(a) authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of the title." 11 U.S.C. § 105(a).  Relief under Bankruptcy Code § 105(a) is particularly appropriate in a chapter 7 case when necessary to preserve the property of the Debtor's estate.

168.    The Trustee realleges and reincorporates the allegations set forth in paragraphs 1 through 99 above as though fully set forth herein.

169.    The Trustee seeks a preliminary injunction preventing the Defendants from distributing any funds generated by medical billing under the Debtor's FEIN or NPI until the Court determines the whether the Defendants are liable to the estate for improper transfers, improper distributions or improper corporate conduct.

170.    Alternatively, the Trustee seeks a preliminary injunction enjoining CMM from remitting any medical insurance billing payments to the Defendants until the Court determines the whether the Defendants are liable to the estate for improper transfers, improper distributions or improper corporate conduct.

171.    There is a reasonable likelihood that the Defendants are improperly using the Debtor's assets, including the FEIN and NPI, and the Defendants are liable to the estate for improper transfers, improper distributions or improper corporate conduct.

172.    Makar, who has dual citizenship with his birthplace of origin, has placed his homestead property on the market for sale and it is believed that Makar intends to flee the jurisdiction.

173.    The injunctive relief sought by the Trustee is necessary to allow the Court an opportunity to determine whether the Defendants are liable to the estate for improper transfers, improper distributions or improper corporate conduct.

174.    The likelihood of irreparable harm to the Debtor's estate and its creditors, which would result from the dissipation of the medical insurance payments obtained through use of the Debtor's FEIN and NPI, to Makar or others before the Court can determine whether and to what extend the Defendants are liable to the estate, in the absence of injunctive relief far outweighs any harm to the Defendants.

175.    The preliminary injunction sought by Trustee may be issued by the Court without the security otherwise required under Bankruptcy Rule 7065(c).

**WHEREFORE**, the Trustee respectfully requests this Court to enter a judgment in favor enjoining and prohibiting the Defendants pursuant to Bankruptcy Rule 7065 and Bankruptcy Code § 105(a) from distributing any funds billed under the Debtor's FEIN and  NPI until the Court determines the amount owed to the Debtor, or, alternatively, preventing CMM from transferring all future medical insurance payments billed under the Debtor's FEIN and NPI to the Defendants; and freezing the JPMorgan Chase, N.A. pension monies, granting the Trustee such other and further relief as is just and proper.

/s/ Maureen A. Vitucci
MAUREEN A. VITUCCI
Florida Bar No. 0605530
Gray Robinson, P.A.
301 E. Pine Street, Suite 1400
Post Office Box 3068
Orlando, Florida 32802
(407) 843-8880 Telephone
(407) 244-5690 Facsimile
*Attorneys for Trustee*

\7\323 - # 5420407 v1