IN THE UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                      Case No.:  6:12-bk-05979-KSJ
                                            Chapter 7
WASFI A. MAKAR, M.D., P.A.,

        Debtor.
_____/
RICHARD B. WEBBER, II, Chapter 7 Trustee,

        Plaintiff,

v.                                          Adv. Pro No.  6-12-ap-00214-KSJ

AMERICAN CANCER TREATMENT
CENTERS, INC., a Florida corporation,
AMERICAN CANCER CONSULTANTS, P.A.,
a Florida corporation, and
WASFI A. MAKAR, M.D., an individual,

        Defendants.
_____/

**TRUSTEE'S MOTION FOR A WRIT OF GARNISHMENT POST-JUDGMENT
DIRECTED TO JP MORGAN CHASE BANK WITHOUT NOTICE**

        The Plaintiff, RICHARD B. WEBBER, II, Chapter 7 Trustee (the "Trustee"), by and

through his undersigned attorneys, moves the Court pursuant to Section 77.03, *Florida Statutes*,

for a writ of garnishment after judgment to be served on JP MORGAN CHASE BANK("Chase")

and against AMERICAN CANCER CONSULTANTS, P.A. (the "Judgment Debtor").   The

grounds for the motion are as follows:

        1.   On June 20, 2013, the Trustee obtained a Judgment, in the amount of $8,134,395.68,

against the Judgment Debtor in the adversary proceeding captioned *Richard B. Webber v.*

*American Cancer Treatment Centers. Inc., American Cancer Consultants, P.A. and Wasfi A.*

*Makar, M.D.*, filed in the United States Bankruptcy Court for the Middle District of Florida with

a case number of 6-12-ap-00214-KSJ (the "Judgment"), together with interest accruing on said sum from the date of the Judgment, a true and correct copy of which is attached hereto as Exhibit "A".

2.    The Trustee suggests that Chase is indebted to, or has tangible or intangible personal property of the Judgment Debtor, in its hands, possession or control, and moves that the Clerk of Court issue a Writ of Garnishment, commanding Chase named above to answer according to the law in such cases provided.

3.    The Trustee has collected $0.00 toward the satisfaction of the Judgment, and is owed the sum of $8,134,395.68 under the Judgment, together with post-judgment interest, and attorneys' fees.

4.    The Trustee expects to recover part of the sums which remain due on the Judgment in this suit of garnishment and the Trustee does not believe that the Judgment Debtor had in his possession visible property on which a levy can be made sufficient to satisfy the Judgment.

WHEREFORE, the Trustee, moves the Court to issue a Writ of Garnishment directed to Chase and against American Cancer Consultants, P.A..

DATED this 10th day of July, 2013.

JOHN M. BRENNAN, JR.
Florida Bar No. 0098456
Gray Robinson, P.A.
301 E. Pine Street, Suite 1400
Post Office Box 3068
Orlando, Florida 32802
(407) 843-8880 Telephone
(407) 244-5690 Facsimile
*Attorneys for Richard B. Webber, II, Trustee*

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing will be furnished to American Cancer Consultants, P.A., Wasfi A. Makar, M.D., P.A., American Cancer Treatment Centers, Inc. and Wasfi A. Makar, M.D. in accordance with Chapter 77, *Florida Statutes.*

JOHN M. BRENNAN, JR.
Florida Bar No. 0098456

# G R A Y | R O B I N S O N
### ATTORNEYS AT LAW

Wells Fargo Bank

P.O. BOX 3068
ORLANDO, FLORIDA 32802
407-843-8880

Date:  July 10, 2013

63-751
631

359031

Pay: One hundred and 00/100***************************************************************************    $  ***100.00***

PAY
TO THE
ORDER
OF

Middle District Bankruptcy Court

GRAY ROBINSON
OFFICE ACCOUNT

VOID AFTER 90 DAYS

MP

🔒 SECURITY FEATURES INCLUDED. DETAILS ON BACK. 🔒

⑈359031⑈ ⑆063107513⑆ 269940020547⑈

| Payee: | Middle District Bankruptcy Court | GRAY ROBINSON | Check #: | 359031 |
|---|---|---|---|---|
| Vendor ID: | 006911 | | Check Date: | Jul 10/13 |

| Invoice Num | Invoice Date | Reference | Invoice Amount | Amount Paid | Discount Taken | Payment Amt |
|---|---|---|---|---|---|---|
| 07/10/2013 | Jul 10/13 | 28361-1 | 100.00 | 100.00 | 0.00 | 100.00 |
| | | Totals: | $100.00 | $100.00 | $0.00 | $100.00 |

BlumbergExcelsior,® Inc.  www.blumberg.com
Ph. 800-221-2972
Fax 888-299-3301

WLCK86111TP

PRINTED IN U.S.A.

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                          Case No.: 6:12-bk-05979-KSJ
                                                Chapter 7
WASFI A. MAKAR, M.D., P.A.,

        Debtor.
_____/
RICHARD B. WEBBER, II, Chapter 7 Trustee,

        Plaintiff,

v.                                              Adv. Pro No. 6-12-ap-00214-KSJ

AMERICAN CANCER TREATMENT
CENTERS, INC., a Florida corporation,
AMERICAN CANCER CONSULTANTS, P.A.,
a Florida corporation, and
WASFI A. MAKAR, M.D., an individual,

        Defendants.
_____/

## FINAL SUMMARY JUDGMENT

        This case came before the Court, on May 21, 2013, upon the Motion for Summary Final

Judgment by Plaintiff, Richard B. Webber, II, Chapter 7 Trustee (the "Trustee"), on behalf of

Wasfi A. Makar, M.D., P.A., d/b/a American Cancer Treatment Center (the "Debtor"), (the

"Motion") (Doc. No. 45) against Defendants, Wasfi A. Makar, M.D., an individual ("Makar"),

American Cancer Treatment Centers, Inc., a Florida corporation ("Inc.") and American Cancer

Consultants, P.A., a Florida corporation ("P.A.") (collectively, the "Defendants").

        The Court, having reviewed the Motion, the Trustee's Affidavit, and all exhibits thereto,

having considered the documentary evidence and argument by counsel and Makar, and otherwise

being fully advised in the premises, makes the following findings of fact and conclusions of law:

<u>**Parties**</u>

1.      The Trustee is the duly appointed and acting Chapter 7 Trustee for the benefit of creditors of the estate.

2.      The Debtor is and was at all times material hereto a Florida corporation licensed to do and doing business in the State of Florida.

3.      Inc. is an active Florida corporation doing business in the Middle District of Florida.

4.      P.A. is an active Florida corporation doing business in the Middle District of Florida.

5.      Makar is a <u>sui juris</u> individual who resides in this jurisdiction.

<u>**Background**</u>

6.      On May 1, 2012, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby initiating this bankruptcy case (the "Bankruptcy Case").

7.      On October 9, 2012, the Court entered an order converting the Chapter 11 Bankruptcy Case to a Chapter 7 Bankruptcy Case.

8.      On November 27, 2012, the Trustee commenced this adversary proceeding by filing an eleven count Complaint. [Adversary Proceeding ("Adv. Pro.") Doc. No. 1].

9.      On January 10, 2013, the Clerk of Court entered defaults against the Defendants. [Adv. Pro. Doc. Nos. 17-20].

<u>**Jurisdiction, Venue, Conditions Precedent and Right to Attorneys' Fees**</u>

10.     This Court possesses "core" jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b) (2) (1), 28 U.S.C. § 1334, and other applicable law.

2

11.    Venue properly lies before this Court pursuant to 28 U.S.C. § 1409 and other applicable law, in that this case arises in the context of the Bankruptcy Case, as defined below, and the causes of action at issue herein arose in the Middle District of Florida.

12.    The Trustee, or the estate, has utilized the services of GrayRobinson, P.A. as special counsel starting October 10, 2012, and intends to utilize the services of special counsel for the duration of this adversary proceeding.

13.    Pursuant to (a) applicable statutes (b) Florida's "Wrongful Act Doctrine" and (c) the prevailing party doctrine, the Trustee is entitled to recover on behalf of the Debtor the attorneys' fees and costs associated with initiating and prosecuting this adversary proceeding.

### A.    Findings of Fact and Conclusions of Law

**1.    The Debtor and Makar**

14.    Makar formed the Debtor formed in 1997.

15.    The Debtor's federal tax identification number ("FEIN") is 59-3127222.

16.    At all relevant times, Makar was the sole shareholder, owner and President of the Debtor.

17.    Makar was also the Debtor's records custodian.

18.    Makar is a medical doctor, and the Debtor was the entity through which he conducted his medical practice.

19.    For the purposes of medical billing, Makar reassigned to the Debtor his benefits to receive payment on account of providing medical services, which allowed the Debtor to receive payment from the insurance companies for medical services rendered by Makar.

20.    At all relevant times, through Makar, the Debtor provided radiation treatments for cancer patients.

3

21.    The Debtor conducted business under the d/b/a "American Cancer Treatment Center."

22.    The Debtor operated from two offices located at 211 Coral Sands Drive, Rockledge, FL ("Rockledge Location") and 845 Century Medical Drive, Titusville, Florida ("Titusville Location").

23.    The Debtor's mailing address and principal place of business was the Rockledge Location.

**2.    The Debtor's Insurance Billing Practices**

24.    On October 1, 2002, the Debtor executed an Agreement for Medical Billing & Practice Management (the "Agreement") with Comprehensive Medical Management, Inc. ("CMM") for CMM to bill insurance companies on behalf of the Debtor for medical services rendered to patients.

25.    In the Agreement, the Debtor identified itself as "Wasfi A. Makar, M.D. d/b/a American Cancer Treatment Center."

26.    On February 18, 2004, pursuant to the Agreement, the Debtor authorized CMM to apply for the Debtor's enrollment as a Health Care Provider for Medicare.

27.    In the Application for enrollment (the "Application"), the medical provider was identified as "Wasfi A. Makar, M.D., American Cancer Treatment Center," and the Debtor's FEIN was utilized.

28.    Makar executed the Application attesting to having read the contents of the Application and certifying that the information contained therein was true, correct and complete.

4

29.    In connection with the Application, CMM submitted the Articles of Incorporation of the Debtor along with the Debtor's FEIN, as evidenced by a billing statement from the Internal Revenue Service.

30.    Further, in connection with the Application, Makar applied to reassign his medical billing benefits for payment by Medicare to the Debtor (the "Reassignment").

31.    In the Reassignment, the medical provider was identified as "Wasfi A. Makar, M.D., American Cancer Treatment Center" and the Debtor's FEIN was utilized.

32.    Makar executed the Reassignment attesting to having read the contents of the Reassignment and certifying that the information contained therein was true, correct and complete.

33.    Then, on August 16, 2006, the Debtor authorized CMM to obtain a National Provider Number ("NPI") for the Debtor, which is a unique 10-digit identification number issued to health care providers by Medicare and Medicaid Services, for billing purposes.

34.    In the Application for a NPI, the organization name was identified as "American Cancer Treatment Center" and the Debtor's FEIN was utilized.

35.    The NPI received by the Debtor from Medicare and Medicaid services was 1639287709.

**4.    Inc.**

36.    Inc. was formed in 1997 by Makar.

37.    The FEIN for Inc. is 59-3446229.

38.    At all times, Makar has been the President of Inc.

39.    The mailing address and principal place of business for Inc. is the Rockledge Location.

40.    Inc. never provided any services to the Debtor or otherwise conducted any business with the Debtor.

41.    In fact, at all material times, Inc. conducted no business, and was a shell corporation without any legitimate business purpose.

5.    **P.A.**

42.    P.A. was formed in 2010 by Makar.

43.    The FEIN for P.A. is 27-3910155.

44.    At all times, Makar has been the President of P.A.

45.    The mailing address and principal place of business for P.A. is the Rockledge Location.

46.    P.A. never provided any services to the Debtor or otherwise conducted any business with the Debtor.

6.    **The Dr. Chancellor Litigation**

47.    On or about February 5, 2004, the Debtor and Michael W. Chancellor, M.D. ("Dr. Chancellor") entered into an Employment Agreement.

48.    The Employment Agreement provided for the Debtor to pay compensation, late charges, vacation pay, and reimbursement of certain expenses to Dr. Chancellor.

49.    The Debtor breached the Employment Agreement by failing or refusing to pay these amounts.

50.    On January 25, 2007, Chancellor instituted a lawsuit against the Debtor in the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida with a case captioned *Chancellor v. Wasfi A. Makar, M.D., P.A.* and with a case number of 05-2007-CA-

24852 to recover amounts due for compensation, late charges, vacation pay, and reimbursement of certain expenses (the "Chancellor Litigation").

51.    On July 21, 2009, after a trial, judgment was entered in the amount of $232,244.65 against the Debtor in the Chancellor Litigation for the monetary damage caused by the Debtor's breach of the Employment Agreement.[1]

52.    On September 30, 2009, Dr. Chancellor served a writ of garnishment on Wachovia Bank ("Wachovia") directed to any accounts held by the Debtor in an effort to satisfy the judgment.

53.    Wachovia initially froze an account held by the Debtor, but shortly thereafter, mistakenly asserted that the account frozen was not held by the Debtor.

54.    As a result, Dr. Chancellor agreed to relieve Wachovia of the obligation to garnish the account.

55.    On November 13, 2009, Wachovia released control of the Debtor's account.

56.    On that same date, the Debtor issued check number 13596 in the amount of $100,000.00 on the frozen account held at Wachovia and issued the check to Inc., which then was deposited into an account held at RBC Bank ("RBC").

57.    Upon discovering this information, Dr. Chancellor investigated farther into the Debtor's operations and finances.

7.    **The Bank Accounts and the Transfers**

58.    Despite the fact that all practice revenues were earned by the Debtor and billed under the Debtor's NPI and FEIN, since January 1, 2007, and even earlier, through March 2010,

---

[1] On December 13, 2011, an amended judgment was entered in the amount of $318,563.61 against the Debtor in the Chancellor Litigation, representing the attorneys' fees and costs incurred by Dr. Chancellor in the Chancellor Litigation.

virtually all practice revenues were diverted to an account at RBC held by Inc. and Makar with an RBC account number ending in 2879 ("RBC Account 1").

59.    After diverting the Debtor's revenues into RBC Account 1, Makar then transferred a portion of those funds to a second account at RBC held by Makar and Inc. with a RBC account number ending in 7122 ("RBC Account 2"), and then transferred a portion of the funds to an account at Wachovia held by the Debtor with an account number ending in 1580 ("Wachovia Account").

60.    RBC Account 1 and RBC Account 2 have never been funded by anything other than revenues generated by the Debtor, although the owner of the these accounts - Inc. - never provided medical services to anyone, or conducted any business of any kind.

61.    From each of these accounts, Makar further diverted the funds by transferring substantially all, if not all, of the money out of these accounts for his own benefit.

62.    For instance, from January 2007 through January 2008, RBC Account 2 was funded solely by transfers made from RBC Account 1, which was funded solely by insurance payments made to the Debtor on account of its medical services rendered and deposited into RBC Account 1.

63.    In January 2008, by virtue of the transfers, the RBC Account 2 held approximately $1,000,000.

64.    On January 29, 2008, Makar effectuated a $750,000 transfer from RBC Account 2 to JPMorgan Chase Bank to invest in a Penson Financial Services account.

65.    Then, on October 15, 2008, Makar effectuated a $400,000 transfer and on November 4, 2008, a $200,000 transfer to JPMorgan Chase Bank to invest in a Penson Financial Services account.

66.    This was accomplished at a time when the Debtor owed debts that the Debtor was unable to satisfy.

**8.    Makar Used the Debtor's Funds to Pay Personal Expenses.**

67.    Exhibits 1 and 2 to the Webber Affidavit contain payments all of which were made for the benefit of Makar from the Debtor's diverted practice revenues.

68.    For instance, according to the Schedule A of the Debtor's Voluntary Petition, the Debtor owns no real property.  However, on Exhibits 1 and 2 there are transfers which relate to the purchase, construction, leasing and maintenance of real property.  These transfers include payments made to Spyglass Realty, Kensington South Condominium, BPRH, Construction Engineering Group, Richard's Floor Design, Von Frose, Tax Collector (Gainesville, Texas), Viera East Association, Tuttle-Armfield-Wagner, Re/Max Service Team.  These transfers were not for legitimate business expenses as the Debtor did not own any real property.

69.    Also, Makar wrote checks to his mother, Odette Makar, and his wife, Vivian Makar, which were not for legitimate business expenses, as they were not employees of the Debtor or otherwise rendered services for the Debtor entitling them to payment.

70.    Vivian Makar signed the following checks using the Debtor's bank account: Palm Café, Timmy Vee, Edward Butchezine, Dave Pontones, Daisen Japanese Restaurant, Terry Bury, Crown Plaza, Joan Berni, Lillian Fares, Paul S. Inc., Cash, Sand Kong, Douglass.  These payments were not for legitimate business expenses as Vivian Makar had no authority to use the Debtor's practice revenues.

71.    The Debtor issued checks to Casino Express of Central Florida, Beau Rivage and M.D.D.C., which are all casinos.  There was no legitimate business reason for these transfers.

Makar testified that he used the Debtor's funds to cover expenses for casino trips, including $80,000 for a family reunion.

72.    The Debtor issued checks to Arch Angel Michael Church, a Florida non-profit organization for which Vivian Makar is a director. There was no legitimate business reason for these transfers.

73.    The Debtor issued checks to Norwegian Cruise Line. There was no legitimate business reason for these transfers.

74.    The Debtor regularly issued checks to Florida Medical Physics & Engineering Consulting, Inc., which is owned by Simon Makar who is a relative of Makar. The frequency of these checks is not consistent with a legitimate business practice of maintaining medical equipment.

75.    Additionally, Makar used the funds to cover expenses for his daughter's wedding.

76.    All transfers of funds identified herein, and on Exhibits "1" and "2" to the Webber Affidavit will be referred to herein as the "Bank Transfers."

**9.    Insolvency of the Debtor**

77.    The Bank Transfers as well as the medical equipment and corresponding office supplies constitute all of the Debtor's assets.

78.    At no time did the Debtor have any capital because Makar diverted all of the Debtor's funds ultimately for his benefit.

79.    The Bank Transfers were all made at a time when the Debtor owed Dr. Chancellor substantial sums.

80.    The Debtor knew at the time the Debtor breached the Employment Agreement with Dr. Chancellor that the Debtor would be responsible for repaying Dr. Chancellor.

Case 6:12-ap-00214-KSJ   Doc 77   Filed 06/20/13   Page 11 of 17

81.     Most, if not all, of the Bank Transfers occurred after the Debtor breached the Employment Agreement.

82.     The Debtor knew or should have known that the Debtor would have substantial liability to Dr. Chancellor in light of the amounts the Debtor and Makar failed and refused to pay.

83.     After the Bank Transfers, the Debtor was unable to pay Dr. Chancellor when the debt became due.

**10.     The Debtor concealed the Transfers**

84.     The Debtor and Makar did everything possible to conceal the Bank Transfers.

85.     First, during discovery in aid of execution in the Chancellor Litigation, the Debtor refused to respond to questions related to its assets, even raising the Fifth Amendment privilege against self-incrimination.

86.     Second, in September, 2009, when the Debtor mistakenly received the garnished funds back from Wachovia, the Debtor immediately transferred those funds to the accounts at RBC and ceased using the Wachovia Account.

87.     Third, when Dr. Chancellor learned of the accounts at RBC, the Debtor quickly withdrew all funds from those accounts and proceeded to open an account at TD and diverted all of the Debtor's revenues to the account at TD.

88.     Fourth, on May 1, 2012, when the Debtor instituted its Chapter 11, the Debtor did not identify the accounts at RBC or the account at TD despite the fact that all of the Debtor's funds were diverted to these accounts.

89.    Finally, in the Bankruptcy Case, initially, the Debtor represented that all remaining assets were transferred to P.A., but then later represented that all remaining assets were transferred to Inc.

Therefore, it is;

ORDERED AND ADJUDGED as follows:

### (Count I: Intentionally Fraudulent Transfer)

90.    Makar and Inc. are liable for their receipt of the Bank Transfers as the Bank Transfers were made with the actual intent to hinder, delay and defraud the Debtor's creditors, based on the following:

    a.    The Bank Transfers were made to an insider.

    b.    At all material times, Makar was the sole shareholder and director of the Debtor, and although Inc. did not have any ownership or management interest in the Debtor, for all purposes, Makar was Inc. and Inc. was Makar.

    c.    The Bank Transfers should have been disclosed, but rather, Makar concealed them whenever possible.

    d.    He changed financial institutions whenever a creditor realized his game and always refused to answer legitimate collection questions.

    e.    The Bank Transfers were made at a time when the Debtor was engaged in litigation with Dr. Chancellor, which resulted in a large judgment in favor of Dr. Chancellor and against the Debtor.

    f.    The Bank Transfers were nearly all of the assets of the Debtor, and the Debtor became insolvent by virtue of the Bank Transfers.

g.  The Bank Transfers drained the Debtor of all its revenues causing the Debtor to be practically judgment proof.

h.  The Debtor did not receive anything of value from Inc. for the Bank Transfers, and any value Makar provided was disproportionate compared to the amount of the Bank Transfers.

91.    Plaintiff, RICHARD B. WEBBER, II Chapter 7 Trustee, on behalf of Wasfi A. Makar, M.D., P.A., d/b/a American Cancer Treatment Center, is owed from the Defendants, WASFI A. MAKAR, M.D., 143 Lansing Island Drive, Indian Harbour Beach, FL 32937 and AMERICAN CANCER TREATMENT CENTERS, INC. (Federal Tax I.D. Number 59-3446229) the sum of **$8,134,395.68**, plus attorneys' fees and costs to be determined at a later date, which shall bear interest from the date of the judgment at the rate prescribed by law. For which sums, let execution lie.

92.    The Court specifically finds that the January 29, 2008 $750,000 transfer from RBC Account 2 to JPMorgan Chase Bank for Makar's investment in a Penson Financial Services account is fraudulent and subject to turnover.

93.    Apex Clearing Corporation is hereby directed to turn over the funds derived from the January 29, 2008 $750,000 transfer from RBC Account 2 to JPMorgan Chase Bank for Makar's investment in a Penson Financial Services.

*(Count VII: Mere Continuation/Successor Liability)*

94.    Inc. and P.A. are deemed the mere continuation of the Debtor for all legal purposes, and are liable for the debts of the Debtor, based on the following:

a.  Makar is the sole shareholder and owner of Inc. and P.A.

13

    b.  Makar transferred all assets of the Debtor to Inc. and P.A. when the Debtor ceased operations.

    c.  Inc. and P.A. both operate from the Rockledge Location and the Titusville Location, and operate the identical business involving the same patients.

    d.  One day the Debtor ceased operations, but the very same day, Inc. and P.A. began their operations.

95.    WASFI A. MAKAR, M.D., 143 Lansing Island Drive, Indian Harbour Beach, FL 32937, AMERICAN CANCER TREATMENT CENTERS, INC. (Federal Tax I.D. Number 59-3446229), 211 Coral Sands Drive, Rockledge, FL 32955, and AMERICAN CANCER CONSULTANTS, P.A. (Federal Tax I.D. Number 27-3910155), 211 Coral Sands Drive, Rockledge, FL 32955, are hereby liable for all of the debts of the Debtor.

*(Count VIII: Alter Ego/Corporate Veil Piercing)*

96.    The corporate veils of the Debtor, Inc. and P.A. are hereby pierced for all legal purposes, based on the following:

    a.  Makar formed and operated the Debtor as a buffer with the intent to separate its assets from Makar, Inc., P.A.

    b.  Inc. and P.A. have no corporate existence or purpose that is legitimate or lawful and Makar and the Debtor are one in the same.

    c.  Makar formed Inc. and P.A. solely as a mechanism for the Debtor to transfer a significant portion of its assets as a going concern and thus unfairly prejudice the creditors of the Debtor by placing these valuable assets outside of the reach of the creditors at the time of the Debtor's insolvency.

14

97.    WASFI A. MAKAR, M.D., 143 Lansing Island, Indian Harbour Beach, FL 32937, AMERICAN CANCER TREATMENT CENTERS, INC. (Federal Tax I.D. Number 59-3446229), 211 Coral Sands Drive, Rockledge, FL 32955, and AMERICAN CANCER CONSULTANTS, P.A. (Federal Tax I.D. Number 27-3910155), 211 Coral Sands Drive, Rockledge, FL 32955, are hereby liable for all of the debts of the Debtor.

98.    Based on the corporate nature of the Defendants, the Trustee is not charged with operating any medical practice or other business venture currently engaged in by the Debtor, Inc. and P.A., whether legitimately or wrongfully.  The Trustee is not charged with preparing or submitting bills for reimbursement for services rendered by any medical practice operated by the Debtor, Inc. and P.A., and the Trustee provides no services to any patients of any medical practice operated by the Debtor, Inc. and P.A.

99.    The Trustee has no liability for false claims submitted by the Defendants for services rendered at the medical practice operated, legitimately or wrongfully, by the Debtor, Inc. or P.A.  In light of the current False Claims Act action against the Defendants (Case No. 8:12-cv-792-T-27MAP) and the Trustee's concern that the Defendants will continue to commit Medicare fraud, the Trustee shall dissolve or close the medical practice on or before July 1, 2013.

100.    The 14 day period prescribed in Rule 7062, Federal Rules of Bankruptcy Procedure, shall not apply.  Accordingly, the Trustee shall immediately begin all actions he deems necessary to secure the assets of the medical practice.  In doing so, the Trustee shall use his best efforts to protect patients and their confidential medical records.

101.    The Defendants shall not hinder the Trustee's efforts to sell or dissolve the medical practices operated, legitimately or wrongfully, by the Debtor, Inc. or P.A. and shall not remove or damage existing records or equipment from the medical practice.

102.    The Defendants are hereby permanently enjoined from receiving any medical insurance payments for services billed under any federal tax identification number or national provider number belonging to the Debtor, Inc. or P.A.

103.    The Defendants shall disclose to the Trustee the identity of the financial institution(s) into which funds were deposited that derived from medical insurance billing under the Debtor's federal tax identification number or national provider number since May 1, 2012. The Defendants also shall disclose to the Trustee the identity of the account holder(s) and the account number(s) for those account(s) so utilized. The Defendants have twenty-four (24) hours from the date of this Order to make such disclosures to the Trustee.

104.    The Defendants shall turn over any funds currently held by them that were derived from medical insurance billing under the Debtor's federal tax identification number or national provider number since May 1, 2012. The Defendants have twenty-four (24) hours from the date of this Order to turn over such funds to the Trustee.

105.    From the date of this Order, the Defendants shall turn over to the Trustee any funds derived from medical insurance billing under the federal tax identification number or national provider number belonging to the Debtor, Inc. or P.A. that they may inadvertently receive from the medical insurance companies.

106.    The Defendants forfeit any right, title and interest in the funds retained by the Trustee, surplus or otherwise.

*Reservation of Jurisdiction*

16

107.    The Court expressly reserves jurisdiction over this matter to award the Trustee his

reasonable attorneys' fees and costs.

DONE and ORDERED this 20th day of _____June_____, 2013.

*K.O.*

_____
KAREN S. JENNEMANN
CHIEF UNITED STATES BANKRUPTCY JUDGE

Submitted by:
Maureen A. Vitucci
GrayRobinson, P.A.
301 E. Pine Street, Suite 1400
Post Office Box 3068
Orlando, Florida 32802-3068
(407) 843-8880 Telephone
(407) 244-5690 Facsimile
Attorneys for Plaintiff
e-mail: mvitucci@gray-robinson.com

ATTORNEY VITUCCI IS DIRECTED TO SERVE COPIES OF THIS ORDER ON
INTERESTED PARTIES AND FILE A PROOF OF SERVICE WITHIN THREE (3) DAYS OF
ENTRY OF THE ORDER

\28361\1 - # 6079263 v1                    17